IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CYNTHIA BRELAND BUCKHEISTER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____) | Civil Action No.: 4:10-2450-TER<br><br><br><br><br>ORDER |

      This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

**PROCEDURAL HISTORY**

      The Plaintiff, Cynthia Breland Buckheister, filed an application for DIB on February 18, 2007, alleging a disability onset date of January 4, 2006. (Tr. 9). Plaintiff requested a hearing before an administrative law judge (ALJ) after her claim was denied initially and on reconsideration. A hearing was held on September 3, 2009, at which Plaintiff appeared with a non-attorney representative and testified. A vocational expert (VE) also testified at the hearing. Plaintiff amended her onset date to April 23, 2007. The ALJ issued a decision on November 2, 2009, finding that

Plaintiff was not disabled because she could perform her past relevant work as an auditor, homebound office worker, and secretary. (Tr. 14-23). As the Appeals Council denied Plaintiff's subsequent request for review of the ALJ's decision (Tr. 1-8), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981.

## FACTUAL BACKGROUND

The Plaintiff, Cynthia Breland Buckheister, was born on June 18, 1951, and was 58 years old on the date of the administrative hearing before the ALJ. (Tr. 29). Plaintiff has at least a high school education. (Id.). Plaintiff has past relevant work as an auditor, homebound office worker, and secretary. (Tr. 23).

## DISABILITY ANALYSIS

Both parties have set out a detailed medical history and hearing testimony in their briefs. Thus, the medical record and/or a summary of the hearing testimony will not be repeated herein.

The Plaintiff's arguments consist of the following, quoted verbatim:

    (1)    The ALJ improperly evaluated opinion evidence.

    (2)    The ALJ's decision did not base Plaintiff's residual functional capacity finding on the requisite function-by-function analysis.

    (3)    The ALJ relied improperly on VE testimony assessment.

(Plaintiff's brief).

In her decision of November 2, 2009, the ALJ made the following findings of fact and conclusions of law:

1. The claimant will meet the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since April 23, 2007, the alleged onset date (20 CFR 404.1571 *et seq*).

3. The claimant has the following severe impairments: cervical degenerative disc disease and carpal tunnel syndrome (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Light exertional work is described by the Commissioner of the Social Security Administration as requiring lifting and carrying 20 pounds occasionally and 10 pounds frequently as well as an ability to sit, stand, and walk for 6 hours in an 8-hour workday. (If someone can do light work, we determine that she can also do sedentary which is described by the Commissioner of the Social Security Administration as requiring lifting and carrying up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally (2 hours in an 8-hour day). The claimant should avoid climbing of ropes, ladders, and scaffolds with climbing of stairs and ramps occasionally. She should avoid crawling and overhead lifting and reaching. She can bend and stoop occasionally and kneel and squat occasionally. She can handle and finger objects frequently, feel objects occasionally, avoiding static placement of the neck and head. She should be able to move the head and neck at will avoiding twisting and vibration.

6. The claimant is capable of performing past relevant work as an auditor, homebound office worker, and secretary. This

>       work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7.    The claimant has not been under a disability, as defined in the Social Security Act, from April 23, 2007, through the date of this decision. (20 CFR 404.1520(f)).

(Tr. 14-23).

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official

listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. The Commissioner may carry the burden

of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

### PLAINTIFF'S SPECIFIC ARGUMENTS

**Treating physicians' opinions**

Plaintiff argues that the ALJ failed to properly assess the opinions of his treating physician, Dr. David Apple, her treating chiropractor, Dr. Mark Luckie, and rheumatology specialist, Dr. Alan Nussbaum. Plaintiff states "[t]he ALJ's most eregious error in this respect relates to the testimony of Dr. David Apple, who saw the Plaintiff over several years relevant to her period of disability. Despite statements in two letters that related to the ways in which Mrs. Buckheister's impairments prohibited her from performing her past relevant work, the ALJ honed in on a statement that Mrs. Buckheister was disabled and concluded that all of Dr. Apple's objective findings, treatment notes and opinions about Mrs. Buckheister's limitations ought to be given no consideration." (Plaintiff's brief, p. 9). Plaintiff also contends the ALJ gave no rational for finding that the statements as to her work-related limitations were inconsistent with the evidence of record and made no attempt to show that any of the medical evidence of record was not supported by acceptable techniques and procedures. Plaintiff also argues that Dr. Mark Luckie opined that progress made with physical therapy was negated upon Plaintiff's returned to work but the ALJ did not give this opinion any weight.

The Defendant argues the ALJ reasonably evaluated the medical opinions of record. Defendant asserts that the ALJ correctly observed that Dr. Apple's conclusory opinion that Plaintiff

was disabled is an issue reserved to the Commissioner which was not entitled to controlling weight or special significance. Furthermore, Defendant asserts that Dr. Apple's statement that Plaintiff was "unable to obtain relief even when not working" is not supported by the record.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996) (holding that although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir.1983) (holding a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.").

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).  Specifically, pursuant to 20 C.F.R. § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying the following five factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 30 C.F.R. 404.1527(d)(2) (i-ii) and (d)(3)-(5).

Furthermore, Ruling 96-2p requires that an ALJ give specific reasons for the weight given

to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir.1974).

> The ALJ concluded the following with regard to the evidence and opinions of Dr. Apple:
>
> The claimant's treating physician, Dr. David Apple, wrote in a letter "To Whom It May Concern" dated August 30, 2007, that the claimant was permanently and totally disabled and no longer medically capable of any gainful employment without risk of additional injury; however, the undersigned affords no weight to Dr. Apple's conclusion, as the physician gave no specific restriction regarding the claimant's residual functional capacity. Additionally, the final responsibility for deciding whether a claimant is disabled is a determination reserved for the Commissioner as outlined in 20 CFR 404.1527 and 416.927.

(Tr. 21).

The ALJ went on to discuss the opinions of Dr. Don Stovall, one time evaluating physician, and Christine Lloyd and gave their opinions "great weight" finding their opinions were supported by and consistent with the objective medical evidence. (Tr. 21).

A finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight. In this case, the ALJ noted that he was giving "no weight" to the opinions of Dr. Apple and did not discuss the opinions of Dr. Luckie or Dr. Nussbaum.

Dr. Apple, Plaintiff's treating physician, stated in a letter dated January 19, 2006, that Plaintiff had been under her care for "severe and debilitating neck pain which began in July 2004. As her primary care physician for a number of years, I had never treated her for neck pain prior to this protracted current illness." (Tr. 244). Dr. Apple further stated as follows:

> Both her neck discomfort and headaches improved during periods away from her job, a fact which further implicated her work environment as the basis of her problem.
>
> Unfortunately, the protracted duration of her exposure, even after the location of her computer was identified as the causative factor, has turned what should have been only an acute and treatable injury into a chronic injury which has failed to respond to multiple treatments regimes. . . Only periods of prolonged removal from this work environment have been successful in relieving her pain and the limitations on the range of motion of her neck. For this reason, I have strongly and forcefully advised Mrs. Buckheister that she should avoid further exposure to her current work environment and I have further advised that continuation in her job will almost certainly lead to worsening chronic pain as well as to increasingly limited ranges of motion of her neck.

(Tr. 244).

    Plaintiff submitted a letter from Dr. Apple dated August 30, 2007. In this letter, Dr. Apple stated as follows:

> This letter serves as a supplement to my January 19, 2006, letter regarding the persistent, severe, and debilitating neck and bilateral arm pain which this patient has and continues to suffer. As this patient's internist for the past 13 years I have witnessed first hand the significant deterioration in her daily living and the unfortunate physical, emotional, and mental consequences of this chronic illness.
>
> I have seen Mrs. Buckheister approximately every 3 months since my letter of January 19, 2006, and report without reservation that she has been consistent in both her subjective symptoms and in my objective physical findings. She continues to suffer from chronic neck pain and bilateral upper extremity radiculopathy. I am displeased to report that her condition has not only failed to improve but in fact, and with medical certainty, has further deteriorated. What initially began a[s] a[n] acute illness resulting from her egonomically improper work station and the repetitive duties of her secretarial job has now become a chronic condition rendering her incapable to continue gainful employment without certain risk of further pain and injury. Initially time away from her job afforded some relief from her pain. Unfortunately, that is no longer the case. Her condition has now progressed to the point where she is unable to obtain relief even when not working. Despite the financial difficulties which result from her not working, and which compound her already difficult situation, I have nevertheless advised her in the strongest of terms that it is my firm medical opinion that continuing to attempt to work will lead to further and progressive deterioration. I have also been clear to her in my opinion that she is in fact permanently and totally disabled and no longer medically capable of any gainful employment without risk of additional injury.
>
> Given her failure to improve despite numerous treatment plans including medications, orthopedic and neurosurgical consultations, physical therapy, and leaves of absence it is obvious and of medical certainty that her condition is chronic, has resulted solely from the repetitive duties of her employment, will be unlikely to improve going forward, and in fact is permanently and totally disabling to her.

(Tr. 536).

As previously discussed, the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir.1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178 (*citing* Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)). The ALJ must, however, explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion. Social Security Ruling (SSR) 96–2p; see also 20 C.F.R. § 404.1527(d)(2) (outlining factors an ALJ must consider when determining what weight to give a treating physician's opinion)[1]. "Even if legitimate reasons exist for rejecting or discounting certain evidence, the Secretary cannot do so for no reason or for the wrong reason." Richardson v. Dir., Office of Workers' Comp. Programs, United States DOL, 94 F.3d 164, 168–69 (4th Cir.1996) (*quoting* King v. Califano, 615 F.2d 1018, 1020 (4th Cir.1980)).

This court rejects the Commissioner's argument that the ALJ properly evaluated and weighed Dr. Apple's opinions. While the Commissioner cites to evidence and arguments in support of the ALJ

---

[1] As set forth above, the factors include the length of the treatment relationship; the frequency of examinations; the nature and extent of the treatment relationship; support of the opinion afforded by medical evidence; consistency of the opinion with the record as a whole; and specialization of the treating physician. 20 C.F.R. § 404.1527(d).

rejecting Dr. Apple's opinion, the ALJ, not the Commissioner, must explain why a treating physician's opinion is discounted or rejected. By the Commissioner setting forth the reasons, it is a post-hoc rationalization, which the Court cannot consider. See Golembiewski v. Barnhart, 322 F.3d 912, 915-16 (7th Cir.2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); Steel v. Barnhart, 290 F.3d 936 (7th Cir.2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."). The ALJ stated only that he accorded no weight Dr. Apple's conclusion stating that Dr. Apple gave "no specific restriction regarding the claimant's residual functional capacity. Additionally, the final responsibility for deciding whether a claimant is disabled is a determination reserved for the Commissioner. . ." (Tr. 21). However, Dr. Apple's letter of January 19, 2006, which he supplemented on August 30, 2007, states that Plaintiff has limitations in the range of motion of her neck and debilitating headaches and that the benefits she received from a course of physical therapy was "negated by continual work related twisting and turning of the neck . . ." (Tr. 244). Dr. Apple noted that Plaintiff should avoid further exposure to her current work environment which could lead to increasingly limited range of motion for her neck. (Id.). Dr. Apple also stated in his letter of August 30, 2007, that her condition is chronic and resulted solely from the repetitive duties of her employment. (Id.).

Plaintiff further argues that the ALJ failed to do any analysis as to the opinions of Dr. Nussbaum or Dr. Luckie as required by the Social Security Rulings. Plaintiff was referred to Dr. Alan I. Nussbaum of Rheumatology Associates in Charleston, South Carolina for an evaluation. In his

report dated February 17, 2007, Dr. Nussbaum stated that " . . . cervical spine films with flexion/extension block views done at Roper on December 20, 2006 showed degenerative disease at C5-6 with a congential block vertebra at C2-3 and spina bifida occulta at C5 and C6. . ." (Tr. 306). Dr. Nassbaum also found that trigger point injections in the neck were of no benefit.

> Dr. Nussbaum opined as follows:
>
> . . . Neurologic exam was abnormal for an obviously depressed affect. Strength, deep tendon reflexes, and sensation were normal as was her gait. Musculoskeletal findings included marked limitations of cervical rotation and lateral tilt with greater limitations to the right than to the left. . .
>
> Mrs. Buckheister presents a very difficult situation with chronic pain in the cervical region with no structural problems amenable to surgical intervention and a very poor history for response to physical therapy and injection. Her depression has been quite severe, and I believe that her work has probably been exacerbating both her depression and her neck pain. Hopefully better control of her depression and her not working will allow for effective treatment of the neck pain. I've asked that she start on Lodine 400 mgs. bid. and have asked that she continue the physical therapy treatments which were recently started again. I believe that ongoing treatment with a opiate analgesic in this chronic pain situation is not desirable and also may be having an additional depressive effect. I have asked that she try to cut back on the Mepergan as much as possible. She is scheduled to see Dr. Lloyd in the next few weeks for adjustment to her medication and I will see her back in about a month. As the depression is better controlled, I may want to try some local injection therapy again but would like to move slowly given the long duration and complicated nature of her problem. . .

(Tr. 307).

The Commissioner asserts with regard to Dr. Nussbaum's report and opinion that Dr. Nussbaum did not identify any specific limitations and that to the extent his statement could be read to opine on Plaintiff's ability to continue in her specific job as an auditor for Charleston County School District, "a claimants' s ability to do a past job as she actually performed it is not the only

13

factor that an ALJ considers in determining whether a claimant can perform her past relevant work." (Defendant's brief, p. 15).

Dr. Luckie, Plaintiff's treating chiropractor, reported in a letter date January 23, 2006, that his exam revealed the following:

> Cranial nerves 2 through 12 appeared grossly intact. Active and passive cervical range of motion is reduced and produces pain in flexion, extension, right rotation, and right lateral flexion. She is tender to palpation of her cervical spine and related musculature, to include her upper thoracic region. Muscle spasms are present. Her biceps, triceps, and brachioradalii deep tendon reflexes are equal bilaterally. Cervical compression testing with her neck in the neutral and slight right lateral flexion produces elevated neck pain. Cervical distraction reduces her right shoulder complaint, but produces elevated cervical pain. Vibratory and superficial upper extremity dermatome pinwheel testing is normal. Manual muscle testing reveals a weakness of her cervical flexors. . . She has responded to neck stretches, massages, and therapy; however, once back on the computer at her desk the symptoms return.

(Tr. 245).

The Commissioner argues that Dr. Luckie's report was dated more than a year before the amended alleged onset date and that, as a chiropractor, he is not an acceptable medical source. While the Commissioner makes arguments with respect to the reports and opinions of Drs. Nussbaum and Luckie, the fact is the ALJ did not discuss or even mention them in her decision. Thus, the Commissioner's factors and/or arguments were not cited by the ALJ to discount their opinions and are thus *post hoc* rationale. See Golembiewski, 322 F.3d at 916. As the ALJ has not explained the weight he gave to Drs. Nussbaum's and Luckie's medical reports and opinions, the Court does not know if their opinions were even considered by the ALJ. Furthermore, Dr. Nussbaum's and Dr.

Luckie's reports/opinions appear to give support to Dr. Apple's opinion with regard to Plaintiff's ability to perform her past relevant work.

Therefore, it is not possible for the Court to conduct a proper review of the record to determine if there was substantial evidence to support the unfavorable decision based on an improper analysis of the treating physicians' opinions with regard to Plaintiff being able to return to her past relevant work. Therefore, this case is remanded for the ALJ to reconsider the opinion of Dr. Apple, and to acknowledge what weight, if any, is given to the opinions of Dr. Nussbaum and Dr. Luckie all in accordance with 20 C.F.R. §§ 404.1527(d)(2) (i-ii) and (d)(3)-(5) and Ruling 96-2. The requirement that an ALJ must give specific reasons for discounting a treating physician's testimony is well-established. The Agency has ruled that "the notice of the determination or decision . . . must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p. The undersigned cannot address the remaining issues until the ALJ conducts a proper analysis of the treating physicians' opinions with regard to Plaintiff's physical limitations and her ability to return to her past relevant work. Once the ALJ conducts a proper analysis with respect to the treating physicians' opinions, he should reassess Plaintiff's RFC for a proper review.[2] The court refrains from

---

[2] Even though the opinions of Dr. Luckie and Dr. Nussbaum were dated prior to the alleged amended onset date, they are still part of the record. Further, they may support the opinions of Dr. Apple with regard to Plaintiff's inability to return to past relevant work. This court cannot determine if there is substantial evidence to support the RFC, the hypothetical to the VE, and the ALJ's conclusion that Plaintiff could perform her past relevant work without the proper analysis with respect to the treating physicians' opinions. The ALJ relied on the opinions from the consulting examination of Dr. Stovall, some of the reports of Dr. Christine Lloyd who estimated Plaintiff's GAF at 80 in August 2007, August 2008, and November 2008, but at 50 in May 2009. The ALJ further relied on the conclusions of the non-examining physicians employed by the State Disability Determination Services.

reviewing any further contentions at this time.

## **CONCLUSION**

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, speculate on the barren record presented.

Accordingly, IT IS ORDERED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

AND IT IS SO ORDERED.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

March 9, 2012
Florence, South Carolina